# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-SA-00974-COA

**ERIN K. DAVIS**                                        **APPELLANT**

**v.**

**PUBLIC EMPLOYEES' RETIREMENT SYSTEM**                     **APPELLEE**
**OF MISSISSIPPI**

DATE OF JUDGMENT:              06/14/2018
TRIAL JUDGE:                  HON. JOSEPH ANTHONY SCLAFANI
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT,
                              FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:       GEORGE S. LUTER
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: SAMUEL MARTIN MILLETTE III
NATURE OF THE CASE:           CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                  AFFIRMED - 10/29/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., WESTBROOKS AND C. WILSON, JJ.

### C. WILSON, J., FOR THE COURT:

¶1.     The Public Employees' Retirement System of Mississippi (PERS) Board of Trustees (the PERS Board) denied Erin Davis's request for disability retirement benefits. The statutory requirement for PERS disability is a finding that a member is likely permanently disabled from performing the usual duties of employment. Here, the PERS Board found there was insufficient evidence that Davis is likely permanently disabled from teaching. Davis appeals, contending that substantial evidence does not support the PERS Board's denial of her claim and that her due process rights were violated. We affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     On September 5, 2012, a student attacked Davis, a STEM and world history teacher in the Vicksburg-Warren County School District, at work.  According to Davis's testimony, the student was being uncooperative.  Davis went to push the intercom button in her classroom when the student elbowed Davis in the side, threw her down, and slammed the door into her head while she was on the ground.  Davis testified that the attack left her dazed but not unconscious.

¶3.     Two days later, Davis's husband took her to the emergency room for dizziness and a headache.  Davis had a CT scan, but the results returned inconclusive.  The doctor told Davis that she likely had a concussion.  Davis returned to work eight days after the incident.  She finished working the remainder of the school year and began working the following school year, although she periodically missed work, using medical leave.  On December 2, 2013, when Davis did not return to work after exhausting her medical leave, she was terminated.

¶4.     Approximately four months after Davis was terminated, on March 27, 2014, Davis applied for PERS disability retirement benefits.  Because Davis had eight and a half years of service credit and was a vested, albeit inactive, PERS member, she was eligible for both non-duty- and duty-related disability benefits.[1]  But after reviewing Davis's records, the PERS Medical Board (the Medical Board) found there was insufficient evidence to support Davis's claim that her medical condition prevented her from performing the duties of a

---

[1] Davis was an inactive PERS member at the time she applied for PERS disability benefits because she was no longer teaching.  This means Davis had to provide "satisfactory proof" to the PERS Board "that [her] disability was the direct cause of withdrawal from state service."  Miss. Code Ann. § 25-11-113(1)(c) (Supp. 2011).

teacher. The Medical Board denied Davis's disability claim, and Davis appealed.

¶5. The PERS Disability Appeals Committee (the Appeals Committee), comprised of two physicians and an attorney/nurse, conducted a de novo review of Davis's claim. The Appeals Committee held hearings on December 1, 2014, and June 1, 2015. Davis and her husband testified and provided evidence, including additional medical records. Davis testified that she could no longer work due to dizziness, vertigo, headaches, back and limb pain, inability to drive or focus, and inability to sit or stand for any sustained length of time.

¶6. On June 1, 2015, the Appeals Committee issued a thorough, twenty-one page statement of factual findings and conclusions of law. In its analysis, the Appeals Committee noted that Davis's medical records pre-dating the 2012 incident show a long history of pain complaints, sleep disturbances, and pain-management treatments.[2] The Appeals Committee also addressed the opinions and reports of various doctors that had seen Davis:

> Dr. [Krishna] Goli, [a] neurologist, wrote in a memo dated April 29, 2013, that Ms. Davis had a complete work-up includ[ing] an MRI and MRA of the brain on October 30, 2012[,] that was unremarkable. . . . He noted he had never restricted Ms. Davis'[s] driving because she looked to have no neurological problems and her imaging studies revealed no abnormalities. He stated he had no objective evidence to support[] her subjective complaints and therefore left driving to her judgment.
>
> . . . .
>
> At PERS'[s] request, Ms. Davis underwent an independent medical examination [(IME)] on July 1, 2014, by Dr. David Collipp, an expert in physical medicine and disability. . . . Dr. Collipp opined that from a physical standpoint, he believed Ms. Davis was able to perform light duty work with a 20-pound lift maximum. All of these restrictions fell within her job function

[2] The Appeals Committee further noted that these complaints increased following a 2010 automobile accident.

requirements.

. . . .

Dr. [James] Parker[, a neuro-ophthalmologist,] found all objective testing related to dizziness, vertigo, and headaches to be negative and entirely normal. He stated that he could not continue to write her work excuses without any positive objective test results.

Dr. [Howard] Katz wrote that Ms. Davis likely reached maximum medical improvement (MMI) regarding any injury associated with the September 2012 incident within one year.[3] He recommended physical therapy of her vertigo and a prescription change for her headaches, but listed her only permanent work restrictions as no working at unprotected heights or on moving platforms, no high-heeled shoes, and no driving as an occupation. None of these restrictions would prevent Ms. Davis from performing her job duties as a teacher.

Dr. Blount[4] found that Ms. Davis likely has several medical issues that could cause pain, but he felt her use of narcotics played a role in her memory and attention issues. In his opinion she has the physical ability to perform her duties as a teacher.

Dr. [Dedri] Ivory[, a rheumatologist,] completed a PERS DSBL 7 stating that Ms. Davis'[s] condition was chronic with poor prognosis for recovery, but she had no restrictions and any impairments were unknown.

Dr. [Robert] Strong, who treated Ms. Davis both before and after the September 2012 incident, completed a PERS DSBL 7 listing her only restrictions as driving and going up stairs due to vertigo and medications. Ms. Davis stated family members were able to drive her to and from work after the incident and her employer reported the school had an elevator she could use in lieu of the stairs.

Dr. [Edward] Manning, a clinical neuropsychologist, performed numerous tests and found Ms. Davis'[s] cognitive testing to be good and her intellectual functioning to be at the superior level. The objective measures

---

[3] Dr. Katz performed an IME on Davis on August 18, 2014.

[4] Dr. Blount's first name does not appear in the record.

4

indicated her only difficultly was with speed processing, which he believed could be attributed to her medications. He found no other clear deficits.

¶7. After considering Davis's voluminous medical record, the Appeals Committee recommended that Davis's claim for both non-duty- and duty-related disability benefits be denied. The committee explained that Davis's records did not provide sufficient evidence to support a finding that she is likely permanently disabled from teaching:

> None of the treating physicians or IME doctors have stated that Ms. Davis is permanently disabled. After reviewing all of the records, we note that Ms. Davis may have a few restrictions such as to avoid climbing stairs and driving. These are issues that Ms. Davis was able to work with for over a semester, even before she reached maximum medical improvement. Multiple doctors have expressed concern about her medication regimen and have attributed her cognitive issues to medications. . . .
>
> This committee has reviewed every document in Ms. Davis'[s] file and questioned and observed both Ms. Davis and her husband about her issues. Although there were extensive medical records produced in this case, there is no persuasive medical evidence that Ms. Davis has a medical condition that would permanently incapacitate her from performing the usual duties of her employment. Additionally, her back pain, fibromyalgia, and rheumatological issues pre-date the September 5, 2012, duty-related incident. We have considered the opinions of the various providers, none of which have written that Ms. Davis is likely permanently disabled, as that term is defined by statute. After considering all of the evidence and testimony presented, there is insufficient evidence to support a finding that Ms. Davis is likely permanently disabled from performing her job. We therefore recommend her claims for both duty and non-duty related disability be denied.

¶8. On August 25, 2015, the PERS Board adopted the Appeals Committee's findings of facts, conclusions of law, and recommendation and denied Davis's request for disability retirement benefits. Davis again appealed. Following briefing and a hearing on the matter, the circuit court affirmed the PERS Board's decision. Davis timely filed a notice of appeal. On appeal, Davis raises the following issues: (1) whether the PERS Board's decision to deny

5

her non-duty-related disability benefits was supported by substantial evidence; (2) whether the PERS Board's decision to deny her claim for duty-related disability benefits is supported by substantial evidence; and (3) whether her due process rights were violated. We address these issues in turn and find no error. Accordingly, we affirm.

STANDARD OF REVIEW

¶9. The standard of review on appeal from an administrative decision of the PERS Board is limited to a determination of whether the PERS Board's decision (1) was supported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the authority of the PERS Board to make; or (4) violated a statutory or constitutional right of the claimant. *Thomas v. Pub. Emps.' Ret. Sys.*, 995 So. 2d 115, 118 (¶14) (Miss. 2008).

¶10. Because the administrative agency sits as finder of fact, a reviewing court is obligated to show "substantial deference" to any determination of credibility or trustworthiness of witness testimony. *Pub. Emps.' Ret. Sys. v. Cobb*, 839 So. 2d 605, 609 (¶12) (Miss. Ct. App. 2003). "There is a rebuttable presumption in favor of a PERS ruling. Neither the appellate court nor the circuit court is entitled to substitute its own judgment for that of PERS, and it is impermissible for a reviewing court to re-weigh the facts of the case." *Pub. Emps.' Ret. Sys. v. Card*, 994 So. 2d 239, 242 (¶15) (Miss. Ct. App. 2008) (quoting *Pub. Emps.' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 891 (¶9) (Miss. 2001)). Thus, even if we would have reached a different conclusion had we been sitting as finder of fact, we may not re-weigh the evidence and substitute our own opinion for that of the PERS Board. *See Bynum v. Miss. Dep't of Educ.*, 906 So. 2d 81, 91 (¶17) (Miss. Ct. App. 2005).

6

DISCUSSION

¶11.    PERS members may claim disability benefits in two circumstances: when the member is vested and becomes disabled for any reason, or when the member, vested or unvested, becomes disabled "as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty . . . ."  Miss. Code Ann. §§ 25-11-113(1)(a), 25-11-114(6) (Supp. 2011).  Disability is defined as "the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by [PERS] . . . ."  Miss. Code Ann. § 25-11-113(1)(a).

¶12.    To receive disability retirement benefits, a PERS member must prove that (1) the member is mentally or physically incapacitated for the further performance of duty; (2) the incapacity is likely to be permanent; and (3) the member should be retired.  Miss. Code Ann. § 25-11-113(1)(a).  "The applicant for disability benefits carries the initial burden of proving to PERS, through objective medical evidence, that she is disabled."  *Pub. Emps.' Ret. Sys. v. Worlow*, 172 So. 3d 745, 747 (¶14) (Miss. Ct. App. 2011).  "Objective medical evidence" includes

> reports of examinations or treatments; medical signs that are anatomical, physiological, or psychological abnormalities that are observed and documented by medical professionals; psychiatric signs that are medically demonstrable phenomena indicating specific abnormalities of behavior, affect, thought, memory, orientation, or contact with reality; [and] laboratory findings that are anatomical, physiological, or psychological phenomena that are shown by medically acceptable laboratory diagnostic techniques, including, but not

7

limited to, chemical tests, electrocardiograms, electroencephalograms, X-rays, and psychological tests.

PERS Bd. Reg. 45A(105)(3) (2012). Mindful of these requirements, we turn to the merits of Davis's appeal.

## I. Non-Duty-Related Disability Benefits

¶13. Davis first contends that, given her medical record, there is not substantial evidence to support the PERS Board's denial of her claims for non-duty-related disability benefits. We disagree. We have defined substantial evidence as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Davidson v. Pub. Emps.' Ret. Sys.*, 219 So. 3d 577, 581 (¶15) (Miss. Ct. App. 2017) (quoting *Knight v. Pub. Emps.' Ret. Sys.*, 108 So. 3d 912, 915 (¶13) (Miss. 2012)). In support of her position that substantial evidence does not support the PERS Board's denial of her claim, Davis refers us to various findings within her medical record. Davis's medical record is extensive, and she has seen a number of doctors for various alleged symptoms. But as the finder of fact, it was the PERS Board's duty to determine credibility and which evidence to give the most weight. *Pub. Emps.' Ret. Sys. v. Howard*, 905 So. 2d 1279, 1287 (¶21) (Miss. 2005). Considering the evidence, the PERS Board denied Davis's claim. Reviewing Davis's record, and giving deference to the PERS Board, we find that there is substantial evidence to support the PERS Board's decision.

¶14. To receive non-duty-related disability benefits under section 25-11-113(1)(a), Davis had to prove that she is "mentally or physically incapacitated for the further performance of duty [and] the incapacity is likely to be permanent . . . ." Upon review of her medical records, several of Davis's doctors noted that objective medical testing performed on Davis

8

returned normal or "unremarkable" results. Further, as pointed out by the Appeals Committee, even given Davis's diagnosed medical conditions, the work restrictions that doctors gave Davis do not prevent her from performing the usual duties of teaching. No doctor stated that Davis is likely permanently disabled, as defined by section 25-11-113(1)(a). Accordingly, we find the PERS Board's determination—that Davis did not meet the requirements of section 25-11-113(1)(a)—is supported by substantial evidence.[5]

### II. Duty-Related Disability Benefits

¶15. Davis next contends that there is not substantial evidence to support the PERS Board's denial of her claims for duty-related disability benefits. In addition to the requirements under section 25-11-113, an individual who applies for duty-related disability benefits must prove that she was disabled "as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty . . . ." Miss. Code Ann. § 25-11-114(6). As discussed *supra*, substantial record evidence supports the PERS Board's decision to deny Davis non-duty-related disability benefits under section 25-11-113 for lack of a permanent disability preventing her from teaching. It likewise follows that substantial evidence supports the PERS Board's decision to deny Davis duty-related disability benefits.

### III. Due Process

---

[5] Davis also contends that the PERS Board did not explain its denial of Davis's claim as required by law. We disagree. The Appeals Committee's Findings of Fact and Conclusions of Law, which were adopted by the PERS Board, specifically noted that Davis presented "insufficient evidence to support a finding that [she] is likely permanently disabled from performing her job."

¶16.   Lastly, Davis contends that the PERS Board violated her due process right to a fair adjudication of her claims.   Davis bases this contention on the Appeals Committee's statement, adopted by the PERS Board, that none of Davis's physicians said that she was "permanently disabled."   Davis asserts that it is unfair for the PERS Board to use the absence of a physician's statement regarding permanent disability against her when the PERS Form DSBL 7—"Statement of Examining Physician"—no longer asks physicians this particular question.   We disagree.

¶17.   In regard to due process, "an administrative board must afford parties . . . notice and an opportunity to be heard."   *Alston v. Miss. Dep't of Emp't Sec.*, 247 So. 3d 303, 311 (¶29) (Miss. Ct. App. 2017), *reh'g denied* (Mar. 20, 2018), *cert. denied*, 246 So. 3d 884 (Miss. 2018), *and cert. denied*, 139 S.Ct. 1176 (2019).   But boards are not required to adopt particular procedures to meet their due process requirements.   *Keeton ex rel. Gray v. Ocean Springs Sch. Bd.*, 2017-CA-01166-COA, 2019 WL 396979, at *3 (¶17) (Miss. Ct. App. Jan. 31, 2019).   To the contrary, "the formalities of practice, procedure, and evidence are relaxed in all administrative proceedings . . . ." *Id*. (quoting *Miss. Bd. of Veterinary Med. v. Geotes*, 770 So. 2d 940, 943 (¶13) (Miss. 2000)).   Reviewing the administrative record here, we find that the PERS Board did not violate Davis's due process right to a fair adjudication of her claim.

¶18.   PERS Form "DSBL 7" is used to assist in providing PERS information regarding the claimant, but these forms are not the only evidence that the PERS Board reviewed.   The Medical Board, the Appeals Committee, and the PERS Board each reviewed the voluminous

10

medical record that Davis provided. The Appeals Committee also heard live testimony from both Davis and her husband. In light of this, we find that Davis was given the opportunity to be heard in a meaningful manner.

CONCLUSION

¶19. Upon review, we find that substantial evidence supports the PERS Board's decision to deny Davis non-duty- and duty-related disability benefits. We also find that the PERS Board did not violate Davis's due process right to a fair adjudication of her claim. We therefore affirm the PERS Board's decision.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. TINDELL AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE OPINION.**